**Bradley S. Slighting, Esq.**
Nevada Bar No. 10225
**SLIGHTING LAW**
1707 Village Center Circle, #100
Las Vegas, NV 89134
Ph. 702-232-2543
Email: brad@slightinglaw.com

Attorney for *Plaintiffs William Holmes &*
*Jennifer Holmes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA - RENO

| | |
|---|---|
| **WILLIAM HOLMES**, an individual and **JENNIFER HOLMES**, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> **DAVID C. ARMSTRONG**, an individual; **DAVID C. ARMSTRONG**, trustee of the **R.J. ARMSTRONG LIVING TRUST,** a Washington testamentary trust, <br><br> Defendants | Case No. <br><br> **COMPLAINT** <br><br> **– AND –** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs William Holmes and Jennifer Holmes allege as follows:

### THE PARTIES

1.      Plaintiff William Holmes (hereafter "*Mr. Holmes*,") is an individual who

is a citizen of the State of Utah.

2.      Plaintiff Jennifer Holmes (hereafter "*Miss Holmes*,") is a citizen of the

-1-

State of Arizona. *Mr. Holmes* and *Miss Holmes* (hereafter collectively referred to as the "*plaintiffs*").

3.     Defendant David C. Armstrong (hereafter "*Mr. Armstrong*") is a citizen of Washoe County, State of Nevada.

4.     Defendant The R.J. Armstrong Living Trust, is a Washington testamentary trust (hereafter the "*Washington Trust*") that conducts business and operates in the State of Nevada.

5.     *Mr. Armstrong* is the trustee and creator of the *Washington Trust*.

6.     *Mr. Armstrong* and the *Washington Trust* shall hereafter be collectively referred to as "*Mr. Armstrong*."

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. Section 1332 (diversity jurisdiction) as the *plaintiffs* are citizens Utah and Arizona respectively, while the *defendants* are citizens and/or conduct business in City of Reno, State of Nevada.

8.     The amount in controversy exceeds $75,000.00.

9.     Venue in the United States District Court for the District of Nevada - Reno because the parties' May 9, 2022 "Confidential Settlement Agreement and Release" (hereafter "*Settlement Agreement*") calls for any dispute to be resolved in the State of Nevada.

## GENERAL ALLEGATIONS

10.     Non-Party Richard J. Armstrong (hereafter the "*decedent*") is the

grandfather of the *plaintiffs* and the father of *Mr. Armstrong.*

11 .    *Mr. Armstrong* is the uncle of the *plaintiffs.*

12.    The *decedent* passed away on April 21, 2022, in Reno, Nevada.

13.    The only surviving children of the *decedent* are *Mr. Armstrong* and his sister, nonparty Susan Helen Armstrong Holmes (hereafter "*Susan Holmes*").

14.    At the time of his passing, the *decedent* had nine (9) grandchildren that include the *plaintiffs.*

15.    The names of the *decedent's* grandchildren are: William Holmes, Jennifer Holmes, Kerry Armstrong, Kelly Armstrong, Madison Armstrong, Spencer Armstrong, Summer Eason, James Derbridge, and Justin Armstrong (hereafter the *decedent's* "*grandchildren*").

16.    In 2013, the *decedent* executed documents that evidenced his intention to provide for an inheritance for his children and his *grandchildren* including a will, a testamentary trust, as well as other written death benefits designations with a national investment company, all of which will be detailed below.

17.    On May 21, 2013, the decedent executed the "Will of Richard Armstrong" (hereafter the "*Arizona Will*") wherein he left the residue of his estate to the trustee of the Restated Richard J. Armstrong Revocable Trust, (hereafter the "*Arizona Trust*") signed also on May 21, 2013.

18.    Based upon the "*Arizona Will*" and the "*Arizona Trust*" the *plaintiffs* were to receive six percent (6%) each of the *decedent's* estate at his death in addition

to seven percent (7%) of those proceeds in the *Fidelity Account.*

19.     In 2013, based upon the terms of the *Arizona Trust*, the *plaintiffs,* children, and *grandchildren* of the *decedent* were scheduled to receive varying amounts of cash proceeds at the *decedent's* death.

20.     In 2013**,** in an effort to facilitate the disposition of cash proceeds to his children and to the *plaintiffs*, his grandchildren, at his death, the *decedent* made specific provisions in the *Arizona Trust* as well as in the *Arizona Will* that was likewise executed in 2013.

21.     In 2013, in an effort to facilitate the disposition of cash proceeds to his children and the *plaintiffs*, his grandchildren, at his death, the *decedent* also opened accounts at "*Fidelity Investment*" and the *decedent* deposited substantial proceeds therein for the benefit of his children and the *plaintiffs*, his grandchildren.

22.     On September 8, 2014, the *decedent* signed a "Beneficiaries-IRA/HSA" statement connected to the Fidelity Brokerage Services, LLC ("*Fidelity*") account owned by *decedent*, account number #349043525 ("*Fidelity Account*") that identified the *plaintiffs, decedent's grandchildren*, for a percentage share of proceeds from the *Fidelity Account* when the *decedent* passed.

23.     On February 28, 2015, *Fidelity's* "Investment Report" indicated that the *Fidelity Account* had $366,752.29 in mutual funds.

24.     It is estimated that as of the date of the *decedent's* passing, April 21, 2022, the *Fidelity Account* should have had a value in excess of $900,000.00.

25.     At all relevant times hereto, *Mr. Armstrong* preyed upon the *decedent* whose mental faculties dramatically declined in 2014 and thereafter.

26.     After 2013, *Mr. Armstrong* wrongfully liquidated those proceeds in the *Fidelity Accounts* and he wrongfully liquidated the assets identified in the *Arizona Trust* for his own betterment and in disregard of the *decedent's* longstanding intention to create an inheritance for his children and *grandchildren*.

27.     Beginning in 2015, the *decedent* was mentally incompetent.

28.     In and after 2015**,** *Mr. Armstrong* caused the *decedent* to sign self-serving documents including powers of attorney, grant deeds, trust agreements and amendments to trust agreements all for the benefit of *Mr. Armstrong* only, and to the detriment of the *decedent's* remaining family members, *grandchildren* and stated beneficiaries.

29.     At all times relevant hereto, *Mr. Armstrong* actively concealed his financial dealings with the *decedent* from the remaining members of the family including the *decedent's* children and *grandchildren*.

30.     Prior to May 9, 2022, the *plaintiffs* have had claims against *Mr. Armstrong* for financial defalcation relative to the wrongful disposition of the *decedent's* proceeds and assets under the *Arizona Will* and the *Arizona Trust*.

31.     Under the *decedent's* 2013 testamentary documents, the *plaintiffs* and the other *grandchildren* were intended to receive and were to divide proceeds that in 2022, should have been well in excess of $4,000,000.00.

32.     Based upon the terms of the *Arizona Trust* as well as the mental incapacity of the decedent beginning in 2015, *Susan Holmes* became the trustee of the *Arizona Trust,* pursuant to the terms of the *Arizona Trust.*

33.     Beginning in 2015**,** due to his incapacity, the *decedent* did not have the capacity or the authority to further handle his financial affairs.

34.     During the time that the *decedent* lacked capacity, *Mr. Armstrong* caused the *decedent* to execute powers of attorney as well as other documents to facilitate the improper transfer of the *decedent's* assets to *Mr. Armstrong* or to business entities that *Mr. Armstrong* controlled.

35.     In 2016, *Mr. Armstrong* created another trust for the *decedent,* this time in the State of Washington called The R.J. Armstrong Living Trust (hereafter the "*Washington Trust"*). *Mr. Armstrong* is the trustee of the *Washington Trust.*

36.     In 2016 and thereafter, *Mr. Armstrong* concealed the existence of the *Washington Trust* from other members of his family including the *plaintiffs.*

37.     Prior to the passing of the *decedent*, *Mr. Armstrong* wrongfully disposed of the assets and proceeds of the *decedent* that would have otherwise been paid to the *plaintiffs* as well as the other grandchildren under the *Arizona Will* and the *Arizona Trust.*

38.     As set forth above, the *decedent* passed away on April 21, 2022.

39.     In late April 2022, after the passing of the *decedent*, *Susan Holmes*, the *plaintiffs* and *Mr. Armstrong* began discussing a resolution of claims against *Mr.*

-6-

*Armstrong* for the parties' respective inheritance payments so that litigation could be avoided.

40.     After the passing of the *decedent*, the *plaintiffs* learned that *Mr. Armstrong* had liquidated the *Fidelity Account* and that he announced that the *plaintiffs* would receive no inheritance.

41.     Based upon the information obtained about the wrongful disposition of the *decedent's* assets, *plaintiffs* entertained the prospect of commencing litigation against *Mr. Armstrong* for fraud and defalcation.

42.     On May 9, 2022, the parties to this action entered into the "*Settlement Agreement.*"

43.     The *Settlement Agreement* was created, in part, to resolve and pay the *plaintiffs'* claims and for the distribution of their inheritance.

44.     Pursuant to the terms of the *Settlement Agreemen*t, *Mr. Armstrong* was to pay the *plaintiffs* the total sum of Thirty Thousand Dollars ($30,000.00) on or before August 3, 2022. *Plaintiffs* were to receive the sum of fifteen thousand dollars ($15,000.00) each.

45.     The *plaintiffs* have fully performed under the *Settlement Agreement.*

46.     *Mr. Armstrong* has not paid *plaintiffs* any of the sums due and owing under the *Settlement Agreement.*

47.     In February of 2023, *plaintiffs* made a demand for payment to *Mr. Armstrong.*

48.     In February of 2023, *Mr. Armstrong's* attorney refused to respond and explain why the *plaintiffs* were not paid under the *Settlement Agreement.*

49.     As of the date of this filing*, Mr. Armstrong* has refused to explain why he has not paid those sums due under the *Settlement Agreement* to the *plaintiffs.*

## COUNT ONE
## (Rescission - Failure of Performance)

50.     *Plaintiffs* allege those allegations set forth above as if fully set for herein.

51.     Under the *Settlement Agreement*, *Mr. Armstrong's* duty thereunder was the payment of proceeds to the *plaintiff*s by August 3, 2022.

52.     *Mr. Armstrong* failed to provide any performance or consideration whatsoever under the *Settlement Agreement* to the *plaintiffs.*

53.     There has been a failure of any consideration under the *Settlement Agreemen*t from *Mr. Armstrong* to the *plaintiffs* so much so that the Court should enter an order rescinding the *Settlement Agreement* as to the *plaintiffs* and thereafter allowing the *plaintiffs* to pursue their financial defalcation claims against *Mr. Armstrong.*

54.     The *Settlement Agreement* must be rescinded in light of the fraudulent circumstances under which it was executed, as evidence by *Mr. Armstrong's* wrongful seizure of the *decedent's* financial affairs, concealment of the disposition of the *decedent's* assets, and other fraudulent or other improper conduct set forth herein.

55.     *Plaintiffs* have been forced to retain counsel to prosecute this action and have therefore incurred attorney's fees and costs to which they are entitled as special

damages in this action.

**COUNT TWO**
**(Constructive Trust)**

56.     *Plaintiffs* allege those allegations set forth above as if fully set forth

herein.

57.     A confidential relationship existed between the parties to this litigation.

58.     *Mr. Armstrong* has wrongfully asserted legal ownership of assets and his

holding of these assets against the *plaintiffs* would be inequitable.

59.     Based upon the foregoing facts and circumstances, a constructive trust

should be imposed by the Court upon all the former assets of the *Arizona Trust,*

*the Arizona Will* as well as the *Fidelity Accounts,* including proceeds in an effort to

obtain an effectuation of justice.

60.     *Plaintiffs* have been forced to retain counsel to prosecute this action, and

have therefore incurred attorney fees and costs to which they are entitled as special

damages in this action.

**COUNT THREE**
**(Negligence)**

61.     *Plaintiffs* allege those allegations set forth above as if fully set forth

herein.

62.     In 2016, *Mr. Armstrong* created and thereafter appointed himself the

trustee and/or the exclusive agent of the *Washington Trust.*

63.     The resulting purpose of the *Washington Trust* was for the benefit of *Mr.*

-9-

*Armstrong,* personally, who took wrongful possession all the assets of the *decedent* identified in the *Arizona Trust,* the *Arizona Will* and the *Fidelity Accounts* as well as elsewhere.

64.     *Mr. Armstrong* had a duty not to intentionally or negligently dissipate and or diminish the assets of the *decedent,* whether the assets are in the *Arizona Trust* or the *Washington Trust.*

65.     At all relevant times hereto*, Mr. Armstrong* has breached his duty of care not to intentionally or negligently dissipate and or diminish the assets of the *decedent*.

66.     At all relevant times hereto, *Mr. Armstrong* has acted in his own self interest as opposed to the interests of the *decedent,* the *plaintiffs,* the *Arizona Trust, the Arizona Will,* the *Fidelity Accounts*, and all beneficiaries of the *decedent*.

67.     *Mr. Armstrong* has intentionally or negligently lost the cash and the assets of the *decedent* found in his personal possession, in the *Arizona Trust, the Arizona Will* and in the *Fidelity Account* potentially in excess of $75,000, the exact amount to be proven at trial.

68.     Based upon the acts and omissions of *Mr. Armstrong,* the *plaintiffs* have suffered direct and proximate damages in excess of $75,000, the exact amount to be proven at trial.

69.     At all relevant times hereto, *Mr. Armstrong* has concealed his activities from the beneficiaries under the *Arizona Trust*, the *Washington Trust* and the *decedent's* other testamentary documents.

70.    *Plaintiffs* have been forced to retain counsel to prosecute this action, and have therefore incurred attorney fees and costs to which they are entitled as special damages in this action.

## COUNT FOUR
### (Breach of Contract-In the Alternative)

71.    *Plaintiffs* allege those allegations set forth above as if fully set forth herein.

72.    *Plaintiffs* allege the following claims in the alternative.

73.    At no time, however, including through the present time, has *Mr. Armstrong* tendered those sums due to the *plaintiffs,* which conduct constitutes a material breach of the *Settlement Agreement.*

74.    As a direct and proximate result of the foregoing breach, *Mr. Armstrong* has breached the *Settlement Agreement* and *Mr. Armstrong* has proximately caused damages in excess of $75,000 that will be proven at trial.

75.    *Plaintiffs* are entitled to prejudgment and post judgment interest at the highest amount under Nevada law from the due date under the *Settlement Agreement* until paid in full.

76.    *Plaintiffs* are entitled to their court costs incurred herein.

77.    *Plaintiffs* are entitled to their reasonable attorney's fees under the terms of the *Settlement Agreement* and also as special damages in this action.

*/ / /*

## COUNT FIVE
### (Breach of the Covenant of Good Faith and Fair Dealing-In the Alternative)

78.    *Plaintiffs* reallege those allegations set forth above as if fully set forth herein.

79.    Implied in every contract in the State of Nevada is the covenant of good faith and fair dealing.

80.    *Mr. Armstrong's* acts and omissions in this case breach the covenant of good faith and fair dealing.

81.    As direct and proximate result of the breach on the part of *Mr. Armstrong*, the *plaintiffs* have suffered damages in excess of $75,000, the exact amount to be proven at trial.

82.    *Plaintiffs* are entitled to their reasonable attorney's fees under the terms of the *Settlement Agreement* and also as special damages in this action. *Plaintiffs* are entitled to prejudgment and post judgment interest at the highest amount under Nevada law from the due date under the *Settlement Agreement,* until paid in full.

## COUNT SIX
### (Declaratory Relief)

83.    *Plaintiffs* reallege those allegations set forth above as if fully set forth herein.

84.    A justifiable controversy exists between the parties hereto regarding their respective rights under the *Settlement Agreement* and under the *decedent's* various

documents providing for an inheritance to be passed along to *plaintiffs* following the *decedent's* death.

85.     *Plaintiffs* assert claim of a legal protected right which is ripe for judicial determination as a result of *Mr. Armstrong's* actions herein.

86.     *Plaintiffs* are entitled to a judicial declaration from this Court determining the rights and obligations of the parties to this action with respect to the *decedent's* estate.

87.     *Plaintiffs* have been forced to retain counsel to prosecute this action, and have therefore incurred attorney fees and costs to which they are entitled as special damages in this action.

**WHEREFORE,** the *plaintiffs* pray for judgment against *Mr. Armstrong*, individually and as trustee of the *Washington Trust* as follows:

A.      For this Court's order establishing that there has been a failure of consideration under the *Settlement Agreement* and that the *Settlement Agreement* is rescinded and rendered void as to the *plaintiffs*.

B.      For this Court's order establishing a constructive trust over all the assets of the *decedent* whether held: 1) in the *decedent's* name; 2) in the name of the *Arizona Trust*; 3) identified in the Arizona Will; (4) in the name of the *Washington Trust*; 5) in the name of *David C. Armstrong*; 5) in the name of unknown individuals as well as business entities that will be identified during the course of this case, all of whom holds assets that originated from the *Arizona Trust* or from the *decedent*.

C.      For damages arising from *Mr. Armstrong's* grossly negligent handling of the *decedent's* assets;

D.      For this Court to declare the parties' rights under the *Settlement Agreement*;

E.      In the alternative, for damages arising from *Mr. Armstrong's* breach of the *Settlement Agreement* in an amount not less than $75,000.00;

F.      In the alternative, for damages arising from *Mr. Armstrong's* breach of the covenant of good faith and fair dealing.

G.      For the disgorgement of all wrongfully taken assets by *Mr. Armstrong* originating in the *Arizona Trust, Fidelity Account, Washington Trust* or remaining in the name of *David C. Armstrong* or one of his business entities, associates or his lawyers.

H.      For an award of exemplary damages against *Mr. Armstrong* in an amount in excess of $75,000, the exact amount to be proven at trial.

I.      For prejudgment and post-judgment interest until paid in full at the highest legal rate allowed in the State of Nevada.

J.      For court costs; and

K.      For reasonable attorney's fees incurred herein.

### JURY TRIAL DEMAND

The *plaintiffs* hereby demand a jury trial for all applicable claims.

/ / /

## AFFIRMATION

The preceding document does not contain a social security number.

**Dated this 23rd day of June, 2023.**

**SLIGHTING LAW**

**/s/ Bradley S. Slighting**
**Bradley S. Slighting, Esq.**
Nevada Bar No. 10225
1707 Village Center Circle, #100
Las Vegas, NV 89134

Attorney for *Plaintiffs William Holmes &
Jennifer Holmes*